UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CIVIL CASE NO.: 94-2503 PBS

CARLOS A. ROMERO, JR.,

    Plaintiff,

v.

COLEGIO DE ABOGADOS DE
PUERTO RICO,

    Defendant.
_____/

**MOTION TO HOLD DEFENDANT COLEGIO DE
ABOGADOS DE PUERTO RICO IN CONTEMPT, TO
ENFORCE PERMANENT INJUNCTION AND FOR SANCTIONS**

COMES NOW the Plaintiff CARLOS A. ROMERO, JR. ("ROMERO"), by and through his undersigned counsel, and files this Motion to Hold Defendant COLEGIO DE ABOGADOS DE PUERTO RICO ("COLEGIO") in Contempt, to Enforce Permanent Injunction and for Sanctions. As grounds therefor Plaintiff alleges as follows:

1. On November 7, 1994 the Plaintiff ROMERO filed suit against the COLEGIO, pursuant to 41 U.S.C. §1983, alleging that the COLEGIO's mandatory life insurance program was not germane to the purposes of an integrated bar association and that compelling Mr. ROMERO to contribute a portion of his dues to such a program was a violation of his First Amendment rights. After almost eight years of litigation, this Court agreed with Mr. ROMERO and on September 26, 2002 entered a permanent injunction prohibiting the COLEGIO from collecting from Plaintiff that portion of his

annual dues attributable to the life insurance program. The injunction provided as follows:

> This Court hereby enters an injunction as follows: Defendant Colegio de Abogados de Puerto Rico is hereby prohibited from collecting from Plaintiff Carlos A. Romero, Jr., that portion of his future annual dues attributable to the Colegio's mandatory group life insurance program.

2. This Court also awarded Mr. ROMERO attorney's fees and costs.

3. For the first several years after issuance of the permanent injunction, the COLEGIO appears to have complied. For each of the years from 2003 to 2006, Mr. ROMERO's annual dues were reduced by between $78.00 and $79.20, the amount attributable to the premium for the objectionable, nongermane life insurance program. See Composite Exhibit "A" attached hereto. .

4. Commencing at or near the end of the calendar year 2006, the COLEGIO, however, embarked on a scheme designed to avoid and circumvent this Court's injunction.

5. Prior to 2007, COLEGIO purchased directly from the insurer a group life insurance policy for all its members and paid the premium directly.

6. Effective December 29, 2006, COLEGIO discontinued the group life insurance policy.

7. Commencing on January 1, 2007, COLEGIO activated a "montepio" (which is a trust) and purposely designed it to provide members of the COLEGIO substantially the same life insurance benefits that had been provided by the group life insurance policy purchased directly by COLEGIO.

2

*CASE NO: 94-2503 PBS*

See Exhibits "B" (pertinent pages from the COLEGIO's 2008 Annual Report) and "C" (Resolution of the COLEGIO dated September 18, 2008).

8. Thus, COLEGIO simply replaced the direct purchase of group term life insurance policy with a life insurance trust funded by COLEGIO. The COLEGIO instituted the montepio without seeking court approval.

9. Immediately after instituting the "montepio," COLEGIO also prohibited ROMERO from deducting from his annual dues any amount paid by COLEGIO to the new life insurance trust. See Exhibit "D", the invoice to Mr. ROMERO for his 2007 dues which did <u>not</u> include a reduction for the life insurance expenditure.

10. The decision of this Court in its memorandum and order dated September 26, 2002 could not have been more clear. Mr. ROMERO could <u>not</u> be required constitutionally to contribute a portion of his mandatory bar fees to a life insurance program, because it was not germane to the purposes of an integrated bar association. It makes no difference whether the life insurance program is administered pursuant to a group life insurance policy or indirectly through a life insurance trust funded directly by COLEGIO. It is objectionable, because it is not germane.

11. The mere creation of a trust (permitted and authorized by the enabling act creating COLEGIO) does not, in and of itself, establish that the activities of the trust are germane. The expenditures of the trust must be considered. If trust funds were used to support political candidates, such trust expenditures (as would life insurance expenditures), would constitute clearly objectionable and nongermane expenditures.

12. The COLEGIO has sought to justify its improper efforts to circumvent this Court's injunction by claiming that none of Mr. ROMERO's dues are purportedly being used to fund the "montepio." According to the COLEGIO the trust is funded entirely from sources other than members' dues. As will hereinafter be demonstrated, that is both legally impermissible and factually false.

### POINT I

### THE COLEGIO IS PROHIBITED FROM USING THE SALE OF NOTARIAL STAMPS TO FUND OBJECTIONABLE ACTIVITIES

13. In 1992, in response to a prior challenge to the activities of the COLEGIO, the Supreme Court of Puerto Rico adopted a set of Rules and Regulations Governing the COLEGIO's Use of Funds Derived from the Payment of Dues and the Sale of Notarial and Bar Stamps. ("Dues and Notarial Stamp Rules"). Said rules were modified in January 1993 and are set forth, in full, in the decision of *Schneider v. Colegio de Abogados de Puerto Rico*, 947 F.Supp. 34, 37-42 (D.P.R. 1996).

14. Rule 2 of the Dues and Notarial Stamp Rules divides the activities of the COLEGIO into two categories: category 1 and category 2.

15. Category 1 activities are those activities "that deal specifically with the regulation and welfare of the profession, and which seek to improve the quality of legal services offered in our country." Rule 2(A)(1). Category 1 activities are, therefore, those activities that are "germane" to the purposes of an integrated bar association. A member cannot object to these activities and related expenditures.

16.     Category 2 activities are all other activities of the COLEGIO. A member can object to these activities and related expenditures.

17.     Rule 10(A) provides that the COLEGIO may <u>not</u> use the proceeds from the sale of notarial and bar stamps for Category 2 activities. Said rule provides as follows:

> (A)     Proceeds from the sale of notarial and bar stamps shall be deposited in a separate account and shall only be used to fund first-category activities.

18.     In addition, under the permanent injunction in effect, Mr. ROMERO's objection to activities relating to life insurance programs and related expenditures was upheld, and COLEGIO was prohibited from collecting a ratable portion of such expenditures from Mr. ROMERO.

19.     Because the Dues and Notarial Stamps Rules prohibit the COLEGIO from using funds from the sale of notarial stamps to fund objectionable Category 2 activities, COLEGIO is prohibited by state law from using notarial stamp fees to fund a life insurance trust. Second, because this Court has already found that a compulsory life insurance program is a nongermane objectionable activity, the COLEGIO is constitutionally prohibited from using the sale of notarial stamps to fund a life insurance trust without refunding an objecting member an appropriate amount.[1]

20.     During the first year of its operation (2007), COLEGIO funded the "montepio" cost with $800,000. See Exhibit "B". Without members dues (and

---

[1] The Dues and Notarial Stamps Rules also mandate in Rule 10(B) how the proceeds from the sale of notarial stamps must be used: (a) one third for community services and (b) two thirds for Category 1 activities (i.e. activities that are germane). These two categories promote the legitimate state interests of regulating the legal profession and improving the legal services in the community to justify constitutionally under the First Amendment of the United States Constitution compelled membership in an integrated bar.

any investments or other income that are derived from members dues) and without monies from the sale of notarial stamps, the COLEGIO lacks sufficient funds to fund the "montepio". Moreover, the COLEGIO is prohibited from using creative bookkeeping to evade the requirements of the First Amendment. *Abood v. Detroit Board of Education*, 431 U.S. 209, 237 ftn. 35 (1977).

21. The COLEGIO is, therefore, necessarily using directly or indirectly some of the dues of members (including those of ROMERO) to fund the life insurance trust.

22. Enough is enough. This Court should make clear to the COLEGIO that its activities are in direct violation of this Court's permanent injunction. The Court should, therefore, find the COLEGIO in contempt of Court and enter any and all appropriate orders necessary to enforce the permanent injunction together with an award of sanctions, refunds, attorney's fees and corresponding interest.

### POINT II

**THE COLEGIO SHOULD BE FOUND IN CONTEMPT OF COURT AND ORDERED TO PAY DAMAGES AND SANCTIONS**

23. COLEGIO, in compelling ROMERO to contribute a portion of his dues to pay for a life insurance program, clearly violates this Court's permanent injunction, and COLEGIO should, therefore, be found in contempt of court.

24. The actions of the COLEGIO are particularly egregious and troubling when viewed in a larger context. After this Court ruled that the life insurance program was not germane to the purposes of an integrated bar, the COLEGIO should have immediately canceled the life insurance program. The COLEGIO, however, did not do so. Instead, the COLEGIO continued to

6

maintain the group life insurance policy and continued to insist that all members (other than ROMERO) contribute to same.

25.  As a result of the COLEGIO's obstinate refusal to abide by the clear decision of this Court, another group of attorneys were compelled to file suit against the COLEGIO objecting to the improper life insurance policy. That second suit resulted in a judgment for the plaintiffs and against the COLEGIO. See the order of Judge Jaime Pieras dated September 25, 2008 in the case of <u>Herbert W. Brown, III, et. al. v. Colegio de Abogados de Puerto Rico</u>, Civil no. 06-1645. In that case Judge Pieras relied upon the decision in the ROMERO case and ruled that the plaintiffs were entitled to the same relief. Judge Pieras specifically held as follows:

> "The Court holds that the granting of permanent injunctive relief, along with the award of monetary damages, serves the purpose of fairly compensating plaintiffs while preventing the Colegio from engaging in the unconstitutional practice of allocating its members' dues to a non-germane compulsory life insurance program."

26.  For reasons known only to the COLEGIO itself, the COLEGIO continues to insist improperly that its members contribute to a life insurance program (before via direct purchase and now via trust), that has twice been found to be unconstitutional. This conduct is intentional and undertaken in bad faith.

27.  Even, however, if the COLEGIO had a "good faith" belief that the "montepio" plan did not violate this Court's prior injunction, that would <u>not</u> provide a defense to civil contempt. As the First Circuit explained in <u>Goya Foods, Inc. v. Wallack Management Co.</u>, 390 F. 3d 63,76 (1st Cir. 2002):

7

> The law is firmly established in this circuit that good faith is not a defense to civil contempt. *Star Fin Servs., Inc. v. AASTAR Mortgage Corp.*, 89 F.3d 5, 13 (1st Cir. 1996) *accord* McComb, 336 U.S. 191, 69 S.Ct. 497 ("An act does no cease to be a violation of a law and of a decree merely because it may have been done innocently.

28. The law has also long been established that if a party is unsure whether its proposed course of conduct will violate an existing court order, the proper thing to do is to ask the court for guidance. See *Goya Foods*, supra at 75:

> When a legitimate question exists s to the scope or effectiveness of a court's order, those who know of the decree, yet act unilaterally, assume the risk of mistaken judgments.   See *Infusaid Corp. v. Intermedics Infusaid, Inc.*, 756 F.2d 1,2 (1st Cir. 1985) (emphasizing that a party who harbors "doubt about the lawfulness of a proposed course of action" always can "ask the district court for guidance").

29. In the case at bar the COLEGIO did not ask for clarification of this Court's prior injunction but instead chose to institute the improper "montepio" program. In so doing, the COLEGIO acted at its peril and should be found in contempt of court.

30. Contempt sanctions are necessary to protect the "due and orderly administration of justice" and to maintain "the authority and dignity of the court." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). Such monetary sanctions ordinarily include an award of damages together with attorney's fees and costs. *Goya*, supra at 78.

8

31. Here the COLEGIO should be required to reimburse Plaintiff for that portion of his dues paid in 2007 and 2008 attributable to the "montepio" program, interest, damages and an award of his attorney's fees and costs.

WHEREFORE the Plaintiff CARLOS A. ROMERO, JR. respectfully requests that the Court find the COLEGIO in contempt of Court and enter any and all appropriate orders necessary to enforce the permanent injunction, together with an award of sanctions, interest, damages and attorney's fees and such other and further relief as to the Court may seem just and proper.

**RESPECTFULLY SUBMITTED.**

In Miami, Florida on this 29th day of January, 2009.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of January, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Carlos A. Rodriguez-Vidal, Esq. at crodriguez-vidal@gaclaw.com and/or via U.S. mail to P.O. Box 9878, San Juan, Puerto Rico 00908.

                                            ROBERT G. POST
                                            Counsel for Plaintiff
                                            **ROBERT G. POST, P.A**.
                                            3195 Ponce de Leon Blvd.
                                            Suite 400
                                            Coral Gables, FL  33134
                                            Telephone:  (305) 445-0014
                                            Facsimile:   (305) 445-6872
                                            rgp@postandromero.com


                            By:    s/ Robert G. Post_____
                                            **ROBERT G. POST**
                                            **USDC #210505**